**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>APOTEX INC., AND APOTEX CORP,<br><br>    Defendants. | C.A. No. 24-64-JLH<br><br>**JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>SLAYBACK PHARMA LLC,<br><br>    Defendant. | C.A. No. 24-65-JLH<br><br>**JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>BAXTER HEALTHCARE CORPORATION,<br><br>    Defendant. | C.A. No. 24-66-JLH<br><br>**JURY TRIAL DEMANDED** |

**LETTER TO THE HONORABLE JENNIFER L. HALL
FROM PLAINTIFF EAGLE PHARMACEUTICALS, INC.
<u>REGARDING PROTECTIVE ORDER DISPUTE</u>**

Dear Judge Hall:

Plaintiff Eagle Pharmaceuticals, Inc. ("Eagle") respectfully submits this response to the August 6, 2024 letter brief submitted by Baxter Healthcare Corporation ("Baxter"), Slayback Pharma LLC ("Slayback"), and Apotex Inc. and Apotex Corp. ("Apotex") (collectively, "Defendants") regarding the proposed protective order. Eagle respectfully requests that the Court adopt Eagle's proposed provisions of the Protective Order.[1]

### I. Efficient Case Administration Necessitates that Materials in the Coordinated Cases May Include Confidential Information of Multiple Defendants

As an initial matter, Defendants' suggestion that these cases are unrelated—merely because they are not ANDA cases—is incorrect; the cases share substantial factual and legal issues. For example, Eagle alleges that each Defendant infringes the same patents with its respective bendamustine hydrochloride injection product, approved under Section 505(b)(2) of the Food, Drug, and Cosmetic Act using Eagle's Belrapzo® as its listed drug. *See, e.g.*, CDER, App. No. 216078Orig1s000 Summ. Review, 4 (Ex. A) ("The proposed product has the same active ingredient, dosage form, dosing regimen, route of administration and concentration of bendamustine following dilution as the listed drug [Belrapzo®]."); *see also* App. No. 215033Orig1s000 Summ. Review, 4 (Ex. B); App. No. 212209Orig1s000 Summ. Review (Ex. C).

In addition to the extensive factual and legal overlap, the three cases are coordinated for pretrial purposes. For example, the cases have identical schedules through the hearing on dispositive and *Daubert* motions. *See* D.I. 29 in C.A. No. 24-66, Scheduling Order, at 19-20. The parties have agreed to serve and answer common discovery requests, *id.* at 6, and Defendants have already served and responded to common interrogatories and requests for production. Eagle anticipates using overlapping experts in all three cases. Moreover, under the coordinated Scheduling Order, Defendants are required to submit coordinated briefing on claim construction and case dispositive motions, *id* at 11-12, 14, which will necessarily require not only cross-sharing of Defendants' confidential information between themselves, but also a single coordinated response from Eagle to Defendants' positions. As a result, the parties have, and will continue to, produce, file, and serve joint materials across all three cases.

Due to the substantial overlap between the cases, discovery produced by one or more of Defendants is likely to be relevant to issues common to all three cases. Such issues include damages (*e.g.*, market definition, demand, and licensing terms); claim construction; and validity (*e.g.*, secondary indicia of non-obviousness). *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1081-82 (Fed. Cir. 2012) (third-party's failure supported a finding of non-obviousness).

Accordingly, in the interest of efficient joint administration of these cases, the protective order should allow a party to include the confidential information of multiple parties in a single document "to the extent necessary to facilitate the filing and/or service of documents containing,

---

[1] The document attached as Ex. A to Defendants' letter brief confusingly bears the header "Eagle Edits 7/10/24." D.I. 48-1, Ex. A. The redlines at Sections 4(d) and 27 reflect Defendants' proposal.

1

and the conduct of proceedings involving" the confidential information of multiple parties, and only with appropriate labelling. *See* D.I. 48-1 at Ex. A, Proposed Protective Order, at Section 4(d).

Defendants, by contrast, ask the Court to prohibit the parties from including the confidential information of one Defendant in material filed or served in the other two cases, which proposal will impede discovery and depositions by, for example, requiring individual expert reports and depositions for each Defendant and a multiplication of disputes and motion practice.

## II.   Defendants Will Suffer No Harm From Eagle's Proposal, Whereas Eagle Would Be Unfairly Prejudiced by Defendants' Proposal

Defendants allege their concern is the risk of "disclosing their most sensitive confidential information to each other." D.I. 48, 1. This stated fear is groundless. The undisputed provisions of the proposed protective order give Defendants the ability to designate "information that contains highly sensitive financial or strategic information" as "HIGHLY CONFIDENTIAL," which the parties have already agreed may *not* be disclosed to a receiving party's in-house personnel. D.I. 48-1, Ex. A, Section 5(b). In other words, the proposed protective order already gives each defendant ample protection against disclosure of its highly confidential information to anyone working inside another defendant's organization. Moreover, Eagle has already entrusted its own confidential information to the same individuals that Defendants are trying to keep from seeing theirs. Defendants have not explained why it is safe for Eagle to share its information, but dangerous for Defendants to do so. In sum, Defendants have not identified any real risk, despite their burden to show that the limited disclosure Eagle proposes should be prohibited. *See In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("A party seeking a protective order carries the burden of showing good cause for its issuance.")

By contrast, Defendants' proposal would unfairly prejudice Eagle. Under the proposed protective order, each Defendant is free to share its own confidential information with any other party, including the other Defendants, and to use such information for any purpose, including in support of claims and defenses against Eagle. *See* D.I. 48, 48-1, Exhibit A, Section 4(c) ("A Producing Party is free to do whatever it desires with its own Confidential Information or Highly Confidential Information.") Under Defendants' proposal, however, Eagle's hands would be tied; while Defendants would be permitted to trade and use each other's information against Eagle in any of the three coordinated cases, Eagle would be unable to do the same. Should the Court entertain Defendants' proposal, Defendants should similarly be precluded from sharing their own confidential information with one another.

Defendant's response, that "Eagle can simply request permission" to include a Defendant's information in a document or proceeding would be extremely unwieldy and prejudicial to Eagle, requiring it to disclose the contents of its evidence and arguments (*i.e.*, work product) to Defendants well before the deadlines set forth in the Scheduling Order or applicable rules. Notwithstanding Defendants' vague assurance that they will respond "reasonably" and "timely," Defendants would be able to use the protective order to control Eagle's ability to prepare its case. For reasons of fairness and efficiency, Eagle should be able to use one Defendant's confidential information, if necessary, to rebut positions taken by other Defendants, and Eagle's ability to use such evidence should not be conditioned on any individual Defendant's consent on a case-by-case

basis. Indeed, D. Del. LR 26.2 allows outside counsel access in the absence of a protective order, and Defendants' proposal unnecessarily contradicts that rule.

### III. As Courts in this District Recognize, Eagle's Proposal Promotes Efficiency

Eagle's proposal would, as judges in this District recognize, aid in the orderly administration of the cases. *See, e.g.*, *Pharmacyclics LLC v. Fresenius Kabi USA, LLC*, No. 18-192-CFC, Oral Order (D. Del. Oct. 18, 2018) (Ex. D) (adopting proposed cross-use protective order provision because, *inter alia*, contrary proposal "would lead to significant disruptions in discovery, depositions, and court proceedings and would impose an undue burden on the Court."); *H. Lundbeck A/S v. Apotex, Inc.*, No. 18-88-LPS, Oral Order (D. Del. Sept. 13, 2018) (Ex. E) (rejecting proposal precluding cross-use without prior consent because the "proposal ... risks imposing an undue burden on the Court (independent of the burden it imposes on Plaintiffs)"); *see also Shire, LLC v. CorePharma LLC*, No. 14-5694-JS, Tr. Order (D.N.J. May 18, 2015) (Ex. F) at 28:24-29:2 ("If the Court adopts Par's suggestion, the Court believes that it would create intractable management problems dealing with depositions, expert reports, the Markman hearing, et cetera.").

In light of the substantial overlap between the cases, their joint administration before this Court, and the protections already in place, Defendants' proposal unfairly limits Eagle's ability to litigate these cases while offering no meaningful additional protection to Defendants.

### IV. Baxter Conflates Ethical Obligations with Confidentiality

Baxter alone asserts a second line of attack, conflating an asserted Latham & Watkins LLP ("Latham") conflict with the confidentiality provisions of the proposed protective order. D.I. 48, 2-3. McCarter & English, LLP—as counsel to Eagle—could subpoena material from Baxter for use in the Apotex and Slayback cases; such material could then be shared with Latham in the prosecution of the Apotex and Slayback cases. So-called "conflicts counsel" handle such issues all of the time. Baxter thus has no legitimate argument that Latham cannot receive its confidential information, and Baxter has no cause for concern that Latham will violate any ethical duties.[2]

Indeed, as Baxter notes, Latham does not represent Eagle against Baxter; Latham is counsel for Eagle only in the Slayback and Apotex cases. As explained above, there will be joint filings across all three cases. Baxter cites no authority for the proposition that any Latham conflict precludes it from seeing Baxter confidential information or using such information against Apotex and/or Slayback. For avoidance of doubt, Latham cannot use Baxter information adverse to Baxter. The provision proposed by Eagle only allows Latham to consider and include Baxter materials in joint case submissions, and to see Baxter confidential information included in joint submissions. (Latham does not and will not have access to the database housing Baxter's document productions.) At bottom, Baxter has failed to make the requisite showing of good cause necessary to justify precluding barred Latham attorneys from seeing Baxter confidential information. Were the Court to reject Eagle's proposed provision, Eagle would have little choice but to seek discovery from Baxter via third party subpoenas in the Apotex and Slayback cases, which would increase the cost of discovery and likelihood of discovery disputes.

---

[2] Latham already has an ethical screen in place to prevent sharing of confidential information.

Dated: August 13, 2024

                        MCCARTER & ENGLISH, LLP

                        */s/ Daniel M. Silver*
                        Daniel M. Silver (#4758)
                        Alexandra M. Joyce (#6423)
                        Maliheh Zare (#7133)
                        Renaissance Centre
                        405 N. King Street, 8th Floor
                        Wilmington, Delaware 19801
                        (302) 984-6300
                        dsilver@mccarter.com
                        ajoyce@mccarter.com
                        mzare@mccarer.com

                        *Attorneys for Plaintiff*