# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br> v. <br><br> APOTEX INC., AND APOTEX CORP, <br><br> Defendant. | C.A. No. 24-64-JLH <br><br> **JURY TRIAL DEMANDED** <br><br> **PUBLIC VERSION** |
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br> v. <br><br> SLAYBACK PHARMA LLC, <br><br> Defendant. | C.A. No. 24-65-JLH <br><br> **JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br> v. <br><br> BAXTER HEALTHCARE CORPORATION, <br><br> Defendant. | C.A. No. 24-66-JLH <br><br> **JURY TRIAL DEMANDED** |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM DEFENDANTS APOTEX INC., APOTEX CORP., SLAYBACK PHARMA LLC, <u>AND BAXTER HEALTHCARE CORPORATION</u>**

Dear Judge Burke:

Defendants Baxter Healthcare Corporation ("Baxter"), Slayback Pharma LLC ("Slayback"), and Apotex Inc. and Apotex Corp. ("Apotex") (collectively, "Defendants") respectfully submit this letter brief pursuant to the Court's April 28, 2025 Order (D.I. 101)[1] to address three discovery disputes: (1) Eagle's refusal to search for documents related to the role of sodium hydroxide ("NaOH") in Eagle's bendamustine products; (2) Eagle's refusal to produce discovery into its recent sale of royalties on its bendamustine products; and (3) Eagle's limitation on the deposition of Christopher Buxton, a co-inventor of the Patents-in-Suit.[2]

### I. Eagle Must Search For and Produce Documents Related to the Role of NaOH

Eagle refuses to search for and produce documents responsive to Defendants' RFP No. 39, which seeks "documents that refer or relate to sodium hydroxide in Belrapzo®, Bendeka®, or any other Bendamustine Product." Ex. 14 (Defs. First Set of RFPs) at 17. Defendants narrowed this RFP to documents "referring or related to *the role of* sodium hydroxide in Belrapzo, Bendeka, and any other *liquid* Bendamustine Product developed by Eagle." Ex. 2 at 2 (emphasis added). Because these documents are critically important to infringement, damages, and non-infringing alternatives, the Court should compel Eagle to search for and produce these documents. Ex. 18 (Proposed Order) at 2.

This case concerns bendamustine, a chemotherapy drug used to treat various types of cancer. The Patents-in-Suit are limited to liquid bendamustine compositions comprising "a pharmaceutically acceptable fluid *consisting of* polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol." Ex. 4 ('214 Patent) at Claim 1; Ex. 5 ('783 Patent) at Claim 1 (emphasis added). Over a century of patent law confirms that the "consisting of" phrase limits the claimed "pharmaceutically acceptable fluid" to the five listed ingredients: polyethylene glycol ("PEG") and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol. D.I. 75 at 2-3. But Defendants' liquid bendamustine products all contain fluids with an additional ingredient—sodium hydroxide—used to adjust the acidity of those fluids.

While Eagle dismisses the relevance of sodium hydroxide in Defendants' products, Eagle does not deny that the role of sodium hydroxide is central to this case. Eagle argued that a jury will need to assess "whether sodium hydroxide…is part of the pharmaceutically acceptable fluid or the 'liquid bendamustine containing composition.'" *Id.* at 43. And Judge Hall recognized the centrality of this issue at the parties' Markman hearing. Ex. 7 (Markman Tr.) at 38:11-19 ("Now, counsel raised a point today in argument . . . that opens you up to turn around and argue that because sodium hydroxide was added as an ingredient, now that takes it out of the scope of the claim."); *id.* at 40:25-41:6 ("What if a [POSA]…would understand that you add sodium hydroxide to PEG to adjust the pH. But, nevertheless, it's still PEG. Can they put that on a[t] trial? You would say, no, because sodium hydroxide is a pharmaceutically acceptable fluid.").

This issue is not limited to Defendants' products. Eagle asserts that its branded bendamustine products—Belrapzo® (the reference label drug) and Bendeka® (sold by Teva)—fall within the

---

[1] All docket entry citations are from *Eagle Pharm., Inc. v. Baxter Healthcare Corp.*, 24-cv-66.
[2] Slayback joins only in the first and third dispute.

scope of the claims. Ex. 6 (Belrapzo® Label) at 2; Ex. 15 (Bendeka® Label) at 17. That bears on issues including commercial success, non-infringing alternatives, and Eagle's demand for lost profits. And whether Eagle considers sodium hydroxide part of the "pharmaceutically acceptable fluid" of its formulations—and if so, why—is relevant to whether sodium hydroxide is part of the "pharmaceutically acceptable fluid" in Defendants' products. Defendants are entitled to review Eagle's documents relating to the role of sodium hydroxide in liquid bendamustine formulations.

Nonetheless, for months Eagle has refused to even search for these documents. Ex. 2 at 1. Eagle's attempted justifications all fail.

First, Eagle insists that the scope of RFP 39 is unclear and overbroad. This argument makes no sense because Eagle seeks the ***same discovery*** from Defendants. *See* Ex. 8 at 5 (Eagle asking Defendants to "[i]dentify and describe with full particularity the role of sodium hydroxide in Your NDA Product and/or its manufacture"); Ex. 1 at 15 (requesting "[a]ll documents that refer or relate to the use of sodium hydroxide to adjust the pH of polyethylene glycol for use in pharmaceutical drug products."). Further, RFP 39 provides examples of responsive documents, including documents that relate to the decision to include sodium hydroxide in Eagle's bendamustine products and any relevant testing. Ex. 2 at 1-2; Ex. 14 at 17. Finally, Defendants proposed narrowing the Request's scope and identified specific custodians whose files would likely include responsive documents and should be searched.³ Ex. 2 at 2-4. Eagle rejected Defendants' proposed narrowing and offered no counterproposal. Ex. 9 at 1.

Eagle next claims that it has "already produced" thousands of documents responsive to this Request. But Eagle has not identified a ***single*** such document. *Id.* at 1. And because Eagle did not search for responsive documents, any production of responsive documents was incidental—especially because Eagle's production is mostly a re-production of documents produced in prior litigations that did not involve the sodium hydroxide issue. Ex. 10 at 1; Ex. 11 at 1. That Eagle may have incidentally produced some documents in its re-production or in response to other requests that are ***also*** responsive to RFP 39 does not absolve Eagle of its "duty to conduct a reasonable search for responsive documents" to RFP 39—something Eagle admits it has not done. *Azurity Pharms., Inc. v. Bionpharma Inc.*, 21-cv-1286, D.I. 489, at 3 (D. Del. Mar. 18, 2024) (cleaned up) (plaintiff must "***search for*** and produce" certain categories of documents where plaintiff "produced some documents" in those categories but "did not represent that [plaintiff] ***searched for*** and produced" those documents) (emphasis added); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. Feb. 6, 2006).

Further, Eagle's insistence that it has produced documents similar to those Defendants produced that discuss NaOH, such as regulatory files, batch records, and development reports, undercuts its assertions that it cannot understand the request. But Eagle likely possesses ***other*** types of responsive documents that Defendants do not possess. Eagle simply has refused to conduct a reasonable custodial search. And because Eagle admits it did not search for responsive documents, Eagle has no basis to argue the produced documents constitute the full scope of Eagle's relevant, responsive documents. Indeed, Eagle admitted during the parties' May 6 teleconference that

---

³ Defendants did not simply require Eagle to search its custodial files for the terms "sodium hydroxide" and "bendamustine." Ex. 2 at 2.

2

additional responsive documents likely exist and have not been produced, raising the concern that Eagle has produced cherry-picked documents and is withholding documents unhelpful to its case.

Finally, Eagle faults Defendants for not identifying responsive documents that Eagle failed to produce. But "[Defendants] cannot be expected to guess which responsive materials, if any, [Eagle] has withheld on the basis of a specific objection...That obligation falls squarely on [Eagle.]." *See Doe v. Mast*, 2023 WL 8235244, at *5 (W.D. Va. Nov. 28, 2023). Defendants identified custodians who are likely to have responsive documents, but Eagle has simply refused to search those custodial files. Ex. 2 at 2-4. The Court should compel Eagle to search the custodial files of the individuals identified in Defendants' March 28, 2025 letter and produce documents responsive to RFP 39. Ex. 18 at 2.

## II. Eagle Must Produce Documents Related to Eagle's 2025 Royalty Purchase Agreement

The Patents-in-Suit are listed in the Orange Book in connection with Eagle's Belrapzo® product and Teva's Bendeka® product. Since 2015, Eagle has received royalty payments from Teva for sales of Bendeka® in exchange for an exclusive license to the Patents-in-Suit. Because the Patents-in-Suit issued long after Defendants launched their bendamustine products that Eagle now accuses of infringement, Eagle contends that Defendants owe it lost profits and/or a reasonable royalty. Relevant to these damages theories is the economic value of each of the Patents-in-Suit, including any royalties that Teva owes or owed to Eagle for the exclusive use of these patents.

On March 31, 2025, Eagle announced a royalty purchase agreement (the "Royalty Agreement) with Blue Owl Capital and an unnamed "party" whereby "Eagle will receive $69 million…in exchange for a prespecified amount of Eagle's royalty interest for net sales of [Bendeka®]." Ex. 12 at 1. Three days later, Baxter and Apotex asked Eagle to produce relevant discovery, including the executed transaction documents, documents exchanged between Eagle, Blue Owl Capital, and the unnamed "party" (including draft agreements, financial/market analyses, and/or forecasts/projections), and relevant communications between the parties. *See* Ex. 13 (Defs. Apr. 3, 2025 Ltr. to Eagle) at 1. Eagle refused to produce anything other than the executed Royalty Agreement and schedules. Ex. 3 at 1.

Eagle's refusal is unjustified. This discovery is responsive to many of Defendants' RFPs, including at least RFP Nos. 19 (Belrapzo® and Bendeka® market research, plans, and analysis); 22 (Belrapzo® and Bendeka® market share); 27 (documents related to patentability of Patents-in-Suit); 52 (agreements/licenses related to bendamustine patents); 53 (documents/communications with third parties related to bendamustine patents, including valuation of those patents, valuation of licenses to those patents, or scope of those patents); and 54 (documents/communications related to Eagle-Teva agreement). Ex. 14 at 14-15; Ex. 16 (Defs. Second Set of RFPs) at 3.

Further, the requested discovery is directly relevant to numerous issues in this case. For example, relevant transaction documents and communications include those exchanged between Eagle and third parties addressing (1) the Patents-in-Suit's value and strength; (2) Eagle's likelihood of succeeding in these litigations; (3) the value of the royalties paid by Teva; (4) Eagle's past and forecasted revenues for its liquid bendamustine products; and (5) the market for cancer drugs generally and liquid bendamustine specifically. These documents are relevant to at least damages and validity. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del.

3

Feb. 9, 2018) (overruling relevance objection to litigation funding agreement documents potentially relevant to valuation, damages, and royalty rates). In addition, drafts showing the Royalty Agreement's negotiation history are directly relevant because the patents and products at issue in those negotiations are the very patents and products at issue here.

Eagle has identified no burden associated with collecting and producing this discovery, nor can it. In deals such as this one, where parties conduct due diligence, the parties typically set up repositories for storing relevant information.  Eagle can easily collect much of the requested discovery from any such repository and produce it.  Further, any relevant drafts or communications would have been exchanged between Eagle and a discrete number of individuals, so it should not be difficult to collect those materials either.  But Eagle has failed to produce *any* of the requested discovery—not even the executed Royalty Agreement and schedules it has agreed to produce.

None of these documents are privileged, nor has Eagle contended as much.  More so, Eagle cannot meet any of its privilege burdens.  For instance, Eagle cannot establish that the interests of the Royalty Agreement parties are "identical, not similar, and [are] legal, not solely commercial." *Id*; *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 338 (D. Del. 2020) (holding the common interest privilege does not apply between a company and a prospective purchaser of a company's asset).  Because the transaction parties were adverse with diverse legal interests, the documents and communications they shared is discoverable.  Eagle also cannot invoke the work product doctrine because it has not, and cannot, show that the purpose of this discovery was "to aid in possible future litigation[.]" *Acceleration Bay*, 2018 WL 798731, at *1-2.  The Court thus should order Eagle to produce the full set of discovery requested in Defendants' April 3, 2025 letter. Ex. 18 at 2; Ex. 13 at 1.

### III. Eagle's Restriction on Dr. Buxton's Deposition Is Unreasonable

The deposition of Dr. Christopher Buxton, a co-inventor of the Patents-in-Suit, is scheduled for May 21-22 in London. Defendants have agreed to limit Dr. Buxton's deposition to seven hours, spread over two days, with the proviso that the seven-hour limitation does not limit re-cross examination of Dr. Buxton should Eagle choose to take its own direct examination. Eagle has conditioned its agreement on Defendants refraining from "duplicative examinations": repeating questions among themselves or from Dr. Buxton's 2019 deposition in *Cephalon v. Slayback Pharma LLC*, 17-1154 (D. Del.).  Ex. 17 at 1. That is improper.  While Defendants have already represented they will not unreasonably duplicate questions, the Federal Rules do not preclude "duplicative" questions and depositions often involve some return to certain subject matter. Moreover, Baxter was not party to the *Cephalon* case, which also involved multiple parties not represented here and concerned different patents and different issues. Eagle has represented that the Patents-in-Suit's other co-inventor ███████████, leaving Dr. Buxton as the sole inventor for deposition.  Defendants do not believe that a dispute remains in light of their representation that they will not unreasonably duplicate questions. To the extent the Court needs to do anything, the Court should order the deposition of Dr. Buxton to proceed under the Federal Rules, without further restriction on the questions that may be asked within the allotted seven hours. Ex. 18 at 2.

4

Dated: May 7, 2025
Public version dated: May 14, 2025

| POTTER ANDERSON & CORROON LLP | MORRIS JAMES LLP |
|---|---|
| By: */s/ Philip A. Rovner*<br>　　Philip A. Rovner (#3215)<br>　　Andrew M. Moshos (#6685)<br>　　Hercules Plaza<br>　　P.O. Box 951<br>　　Wilmington, DE  19899<br>　　(302) 984-6000<br>　　provner@potteranderson.com<br>　　amoshos@potteranderson.com | By: */s/ Cortlan S. Hitch*<br>　　Kenneth L. Dorsney (#3726)<br>　　Cortlan S. Hitch (#6720)<br>　　500 Delaware Avenue, Suite 1500<br>　　Wilmington, DE 19801<br>　　kdorsney@morrisjames.com<br>　　chitch@morrisjames.com |
| OF COUNSEL:<br><br>Martin J. Black<br>Judah Bellin<br>DECHERT LLP<br>Cira Centre, 2929 Arch St.<br>Philadelphia, PA 19104<br>(215) 994-4000<br><br>Amanda K. Antons<br>DECHERT LLP<br>230 Northgate Street #209,<br>Lake Forest, IL 60045<br>(312) 646-5800<br><br>Noah M. Leibowitz<br>DECHERT LLP<br>Three Bryant Park,<br>1095 Avenue of the Americas<br>New York, NY 10036<br>(212) 698-3538<br><br>*Attorneys for Defendant*<br>*Baxter Healthcare Corporation* | OF COUNSEL:<br><br>Deepro R. Mukerjee<br>Lance A. Soderstrom<br>KATTEN MUCHIN ROSENMAN LLP<br>50 Rockefeller Center<br>New York, NY 10020-1605<br>deepro.mukerjee@katten.com<br>lance.soderstrom@katten.com<br><br>Jitendra Malik<br>Joseph M. Janusz<br>KATTEN MUCHIN ROSENMAN LLP<br>550 South Tyron Street, Suite 2900<br>Charlotte, NC 28202<br>jitty.malik@katten.com<br>joe.janusz@katten.com<br><br>Christopher B. Ferenc<br>KATTEN MUCHIN ROSENMAN LLP<br>1919 Pennsylvania Avenue, NW Suite 800<br>Washington, DC 20006<br>Christopher.ferenc@katten.com<br><br>Rachel L. Schweers<br>KATTEN MUCHIN ROSENMAN LLP<br>525 W. Monroe Street<br>Chicago, IL 60661<br>rachel.schweers@katten.com<br><br>*Attorneys for Defendants Apotex Inc. and*<br>*Apotex Corp.* |

SMITH KATZENSTEIN & JENKINS LLP

By: <u>*/s/ Daniel A. Taylor*</u>
    Neal C. Belgam (#2721)
    Daniel A. Taylor (#6934)
    1000 West Street, Suite 1501
    Wilmington, DE 19801
    Nbelgam@skjlaw.com
    Dtaylor@skjlaw.com

OF COUNSEL:

Andrew Miller
Ajay Kayal
Connie Huttner
Robyn Ast-Gmoser
WINDELS MARX LANE &
MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
chuttner@windelsmarx.com
rast-gmoser@windelsmarx.com

*Attorneys for Defendant Slayback Pharma LLC*