**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br> v. <br><br> APOTEX INC., AND APOTEX CORP, <br><br> Defendant. | C.A. No. 24-64-JLH <br><br> **JURY TRIAL DEMANDED** <br><br> **PUBLIC VERSION** |
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br> v. <br><br> SLAYBACK PHARMA LLC, <br><br> Defendant. | C.A. No. 24-65-JLH <br><br> **JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br> v. <br><br> BAXTER HEALTHCARE CORPORATION, <br><br> Defendant. | C.A. No. 24-66-JLH <br><br> **JURY TRIAL DEMANDED** |

**REPLY LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM
DEFENDANTS APOTEX INC., APOTEX CORP., SLAYBACK PHARMA LLC,
<u>AND BAXTER HEALTHCARE CORPORATION</u>**

I. **Eagle Must Produce Documents Related to the Role of NaOH**

Eagle does not dispute that it has failed to search for documents responsive to RFP 39. Instead, Eagle claims that it has satisfied its discovery obligations because, ***in prior litigations***, it searched the files of "15 custodians." D.I. 110 at 2. Eagle's position is untenable. In those prior litigations, there was no RFP similar to RFP 39; moreover, the role of sodium hydroxide in Eagle's products was not even at issue. Eagle has not performed a single custodial search in ***this case*** to identify documents responsive to RFP 39, and has merely re-produced documents from prior litigations, some of which may incidentally contain the words "sodium hydroxide." This does not satisfy Eagle's "duty to conduct a reasonable search" for documents that Defendants have specifically requested and that relate to a critical issue in this case. *Azurity Pharms., Inc. v. Bionpharma Inc.*, 21-cv-1286, D.I. 489, at 3 (D. Del. Mar. 18, 2024).

Eagle's argument that it has already produced "nearly 3,000 documents that explain the 'role of sodium hydroxide'"[1] is a red herring. Eagle came up with this "nearly 3,000" figure by counting documents merely because they hit on the words "sodium hydroxide" or "NaOH." D.I. 110 at 2 n.2. But RFP 39 seeks documents related to the role of sodium hydroxide in ***Eagle's liquid bendamustine products***, not generally. Eagle's figure includes publicly accessible documents that do not discuss liquid bendamustine at all, let alone the role of sodium hydroxide in Eagle's products. *See, e.g.,* Ex. 19 [EAGLEBEN-SA_00288234]; Ex. 20 [EAGLEBEN-SA_00077241]; Ex. 21 [EAGLEBEN-SA_00077310]. Further, because Eagle has not actually searched for responsive documents, it is impossible to determine whether Eagle is withholding unhelpful documents. Eagle insists that Defendants are merely "speculating" that additional responsive documents exist, but Eagle admitted during the parties' May 6th meet and confer that it likely possesses additional responsive documents that have not been produced.

Eagle's relevance arguments also fail. Eagle alleges that its liquid bendamustine products embody the claims of the Patents-in-Suit as a basis for Eagle's arguments related to lost profits, commercial success, and no non-infringing alternatives. *See* D.I. 18 (Am. Compl.) at ¶¶ 17-18, 21-22. Defendants are entitled to test Eagle's allegations, including by determining the role of sodium hydroxide in the "pharmaceutically acceptable fluid" of Eagle's products, which would take Eagle's products out of the claim scope. Further, because the jury will need to decide whether sodium hydroxide is part of the "pharmaceutically acceptable fluid" in Defendants' products, how and why Eagle decided to include sodium hydroxide in its own products are relevant to the question of whether sodium hydroxide must always be incorporated into the fluid of liquid bendamustine formulations. D.I. 75 at 43. The Court should compel Eagle to search for and produce the discovery requested in Defendants' March 28, 2025 Letter. Ex. 18 at 2.

II. **Eagle Must Produce Documents Related to Its 2025 Royalty Purchase Agreement**

As Eagle concedes, the Royalty Purchase Agreement involves the amount of royalties paid to Eagle by a licensee for the use of the Patents-in-Suit. That fact alone establishes the relevance of the discovery requested by Defendants. Further, Eagle fails to show that any of the requested

---

[1] Eagle's current position represents a complete about-face from its prior insistence that it did not understand RFP 39 and could not identify documents responsive to this Request.

discovery is irrelevant. The requested documents—such as financial/market analyses, forecasts/projections, and discussions of the Patents-in-Suit—are directly relevant to damages, including *Georgia-Pacific* factors 8 (profitability, commercial success, and popularity of patented products); 9 (utility/advantages of patent property); and 10 (benefit of the invention).

Eagle's refusal to produce draft agreements also fails. These drafts provide insight into how Eagle and its counterparties valued the Patents-in-Suit, making them relevant to at least the *Georgia-Pacific* factors noted above.[2] Indeed, the *ML-Lee* decision cited by Plaintiffs denied a motion to compel the production of "general categories of documents and all drafts of those documents" but found that "drafts of **certain specific documents** may be relevant, and therefore discoverable." *In re ML-Lee Acquisition Fund II, L.P.,* 151 F.R.D. 37, 41 (D. Del. 1993).[3] Here, Defendants are asking for drafts of **one** specific document that is indisputably relevant—the 2025 Royalty Agreement—and the Court should compel Eagle to produce them.

Eagle's remaining arguments fail. Eagle argues that the requested discovery is cumulative, but as of today, Eagle has not produced **any** documents related to the Royalty Agreement. Eagle also insists that producing this discovery would be burdensome but fails to identify what that burden would be. *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("An objection to a[] document request must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome.'"). As Defendants explained, there is no burden. Finally, Eagle does not argue that these documents are privileged. The Court should compel Eagle to produce the requested discovery. Ex. 18 at 2.

### III. Eagle's Proposed Restrictions on Dr. Buxton's Deposition Are Unreasonable

Eagle cannot cite any rule or decision that justifies restricting Dr. Buxton's deposition. Defendants have agreed to not unreasonably duplicate questions and cannot be precluded from seeking testimony simply because some topics may overlap with an entirely different case. For example, Defendants cannot be precluded from asking Dr. Buxton about the research and development leading to the patents-in-suit, simply because some questions may have been asked on that topic in a case with different parties, and in the context of different accused products, patents, and claims and defenses. As Eagle acknowledges, Defendants are entitled to "seek testimony on issues unique to this action," and precluding Defendants from seeking such testimony would be highly prejudicial. *J M Smith Corp. v. Astrazeneca Pharms. L.P.,* 2020 WL 7867552, at *2 (D. Del. Nov. 13, 2020), did not hold that dated depositions from prior cases restrict questions at new depositions. Rather the court charged lead counsel to do exactly as Defendants are doing here (*see* D.I. 104 at p. 3)—schedule one deposition and commit to not be unreasonably duplicative. Finally, Defendants are three separate parties and are at least entitled to a **combined** 7 hours of deposition time that FRCP 30 would otherwise allow to each. The Court should order Dr. Buxton's deposition to proceed for up to 7 hours without restriction on the questions that Defendants may ask.

---

[2] After Defendants filed their opening letter brief, Eagle gave Blue Owl Capital a security interest in the Patents-in-Suit, further suggesting that the parties' negotiations addressed the value of the Patents-in-Suit. Ex. 22.

[3] None of Plaintiffs' remaining cases address draft contractual agreements. D.I. 110 at 3-4.

Public version dated: May 27, 2025

Dated: May 19, 2025

| POTTER ANDERSON & CORROON LLP | MORRIS JAMES LLP |
|---|---|
| By: */s/ Philip A. Rovner*<br>    Philip A. Rovner (#3215)<br>    Andrew M. Moshos (#6685)<br>    Hercules Plaza<br>    P.O. Box 951<br>    Wilmington, DE  19899<br>    (302) 984-6000<br>    provner@potteranderson.com<br>    amoshos@potteranderson.com | By: */s/ Cortlan S. Hitch*<br>    Kenneth L. Dorsney (#3726)<br>    Cortlan S. Hitch (#6720)<br>    500 Delaware Avenue, Suite 1500<br>    Wilmington, DE 19801<br>    kdorsney@morrisjames.com<br>    chitch@morrisjames.com |
| OF COUNSEL:<br><br>Martin J. Black<br>Judah Bellin<br>DECHERT LLP<br>Cira Centre, 2929 Arch St.<br>Philadelphia, PA 19104<br>(215) 994-4000<br><br>Amanda K. Antons<br>DECHERT LLP<br>230 Northgate Street #209,<br>Lake Forest, IL 60045<br>(312) 646-5800<br><br>Noah M. Leibowitz<br>DECHERT LLP<br>Three Bryant Park,<br>1095 Avenue of the Americas<br>New York, NY 10036<br>(212) 698-3538<br><br>*Attorneys for Defendant*<br>*Baxter Healthcare Corporation* | OF COUNSEL:<br><br>Deepro R. Mukerjee<br>Lance A. Soderstrom<br>KATTEN MUCHIN ROSENMAN LLP<br>50 Rockefeller Center<br>New York, NY 10020-1605<br>deepro.mukerjee@katten.com<br>lance.soderstrom@katten.com<br><br>Jitendra Malik<br>Joseph M. Janusz<br>KATTEN MUCHIN ROSENMAN LLP<br>550 South Tyron Street, Suite 2900<br>Charlotte, NC 28202<br>jitty.malik@katten.com<br>joe.janusz@katten.com<br><br>Christopher B. Ferenc<br>KATTEN MUCHIN ROSENMAN LLP<br>1919 Pennsylvania Avenue, NW Suite 800<br>Washington, DC 20006<br>Christopher.ferenc@katten.com<br><br>Rachel L. Schweers<br>KATTEN MUCHIN ROSENMAN LLP<br>525 W. Monroe Street<br>Chicago, IL 60661<br>rachel.schweers@katten.com<br><br>*Attorneys for Defendants Apotex Inc. and*<br>*Apotex Corp.* |

SMITH KATZENSTEIN & JENKINS LLP


By: /s/ Daniel A. Taylor
    Neal C. Belgam (#2721)
    Daniel A. Taylor (#6934)
    1000 West Street, Suite 1501
    Wilmington, DE 19801
    Nbelgam@skjlaw.com
    Dtaylor@skjlaw.com

OF COUNSEL:

Andrew Miller
Ajay Kayal
Connie Huttner
Robyn Ast-Gmoser
WINDELS MARX LANE &
MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
chuttner@windelsmarx.com
rast-gmoser@windelsmarx.com

*Attorneys for Defendant Slayback Pharma LLC*

4